**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION**


**LINDA I. BURNETT**                                                                          **PLAINTIFF**

vs.                            Civil No. 2:18-cv-02207-PKH-MEF

**ANDREW M. SAUL, Commissioner,**                                                **DEFENDANT**
**Social Security Administration**


### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Linda I. Burnett, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

### I.     Procedural Background

Plaintiff protectively filed her current applications for DIB and SSI on October 22, 2015. (ECF No. 9, p. 28). Plaintiff alleges disability since July 2, 2014, due to back pain with three bulging discs and depression. (*Id*., pp. 28, 367).

Plaintiff's applications were denied initially and upon reconsideration. (*Id*., pp. 28, 245, 254). An administrative hearing was held on May 17, 2017, before the Hon. Clifford Shilling, Administrative Law Judge ("ALJ"). (*Id*., pp. 28, 80-116). At the hearing, Plaintiff amended her alleged onset date to September 16, 2015. (*Id*., pp. 84-85). Plaintiff and a vocational expert

1

("VE"), Debra Steele, testified. (*Id*., pp. 80-116). Plaintiff was represented by counsel, Laura McKinnon. (*Id*.).

By written decision dated January 30, 2018, the ALJ found Plaintiff had the following severe impairments: spine disorders, affective disorders, organic mental disorders, and obesity. (*Id*., pp. 25, 31). The ALJ next determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any impairment in the Listing of Impairments. (*Id*.). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> "[P]erform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except lift and/or carry 20 pounds occasionally; lift and/or carry 10 pounds frequently; stand and/or walk 6 hours out of an 8-hour workday with normal breaks; sit 6 hours out of an 8-hour workday with normal breaks; push and pull limitations pursuant to the lift and carry limitations; occasionally climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently handle and finger bilaterally; and frequently use foot controls bilaterally. Rotation, flexion, and extension of the neck is limited to frequent. The claimant is able to perform work where interpersonal contact is incidental to the work performed. Complexity of tasks is learned and performed by rote with few variables and little judgment. Supervision required is simple, direct, and concrete. (*Id*., pp. 33-38).

The ALJ found that Plaintiff was unable to perform any of her past relevant work ("PRW"), but with the assistance of the VE, the ALJ determined Plaintiff could perform the requirements of the representative occupations of: plastics hospital products assembler (DOT # 712.687-010), with 193,465 in the national economy; garment sorter (DOT # 222.687-014), with 72,405 jobs in the national economy; and, ham rolling machine operator (DOT # 529.685-138) with 161,310 jobs in the national economy. (*Id*., pp. 38-39). The ALJ concluded that Plaintiff had not been under a disability as defined by the Act during the relevant period. (*Id*.).

On October 15, 2018, the Appeals Council denied Plaintiff's request for review. (*Id*., pp. 7-12). Plaintiff subsequently filed this action on December 13, 2018. (ECF No. 1). This matter

is before the undersigned for report and recommendation. Both parties have filed appeal briefs (ECF Nos. 12, 13), and the case is ready for decision.

## II.     Relevant Evidence

The undersigned has conducted a thorough review of the entire record in this case. The complete sets of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

At the administrative hearing, Plaintiff testified that her daily low back pain was a 7 on a 10-point pain scale. (ECF No. 9, pp. 88-90). The pain was aggravated by standing for 30 minutes or more, and by lifting five pounds or more repetitively. (*Id*.). Plaintiff reported when her pain was aggravated it was a 9 on a 10-point scale. (*Id*.). She was no longer taking pain medication but was instead getting shots in her back. (*Id*.). The Tramadol[1] had helped somewhat, and the shots helped for six months, but then her back began hurting again. (*Id*.). Her pain interfered with her sleep on a nightly basis. (*Id*.). She testified that her Risperdal[2] made her sleepy, requiring a two hour nap each day. (*Id*., p. 91).

Plaintiff testified that she also had neck pain, left shoulder pain, bilateral knee pain, hand pain, and shoulder pain. (*Id*., pp. 92-95). Plaintiff testified she had been advised by her doctors that she needed to lose weight because it was bad for her back and knees, but she had put on at least 30 pound in the last several years. (*Id*., p. 98). She testified that she ate when she was depressed or anxious. (*Id*.).

---

[1] Tramadol is used to relieve moderate to moderately severe pain and is similar to opioid analgesics. *See Tramadol, at* https://www.webmd.com/drugs/2/drug-4398-5239/tramadol-oral/tramadol-oral/details. (Last accessed Dec. 17, 2019).

[2] Risperdal is used to treat certain mental/mood disorders such as schizophrenia, bipolar disorder, irritability associated with autistic disorder. Risperdal belongs to a class of drugs called atypical antipsychotics. *See Risperdal, at* https://www.webmd.com/drugs/2/drug-9846/risperdal-oral/details. (Last accessed Dec. 17, 2019).

Plaintiff testified that she had worked since her amended alleged onset date as a driver for Meals on Wheels. (*Id*., p. 87). She performed that job from July 26, 2016, through April of 2017, and she quit because her back began to hurt more. (*Id*.). She took the job expecting it would be an easy job because it was a part-time job working half days, but she found that lifting milk crates full of food and carrying them into a building or nursing home increased her pain. (*Id*., p. 100-101). She testified that she used Icy Hot and Aleve while she was working. (*Id*., p. 99).

Plaintiff testified that she no longer lived with her son, and that her boyfriend did the cooking and cleaning and helped her with her daily activities. (*Id*., p. 103). She testified that her boyfriend was a long-haul trucker and, when he was not home, she was afraid to take a shower due to concerns about falling which meant she would sometimes go several days without a shower. (*Id*., p. 106).

The medical evidence of record shows:

Plaintiff began seeing Russell W. Pearson, D.C., at Arkansas Valley Chiropractic Clinic in March 2012. (*Id*., p. 580). Dr. Pearson found Plaintiff had mild right scoliosis in her lumbar spine, six lumbar vertebrae, and degenerative disc disease of the lumbar spine. (*Id*.). Plaintiff continued to be treated by Dr. Pearson through January 2015. (*Id*., pp. 572-580). In August 2014, Dr. Pearson wrote a letter opining that Plaintiff's work as a caregiver in 2012 aggravated her low back pain almost daily, and that treatment had reduced her pain to a more tolerable level but had not resolved it completely. (*Id*., p. 581). He opined that activities involving prolonged sitting, standing, walking, lifting, or carrying were likely to aggravate her symptoms in her lower back. (*Id*.). In October 2015, Dr. Pearson filled out two check-mark forms and indicated Plaintiff could not sit for 6 hours out of an 8-hour workday, could not sit/stand/walk in combination for 8 hours, and would be limited to sedentary work. (*Id*., p. 570-71).

Plaintiff began treatment for panic disorder with agoraphobia and major depressive disorder with Mark Coffman, LPC, on September 16, 2014. (*Id*., p. 603). She reported her husband had died three years ago, and his death led to some impulsive behaviors that resulted in the loss of her job and last apartment. (*Id*.). She had come out of an abusive relationship in July or August of 2014 and had stayed alone in her apartment since then; she was unable to go to the store alone without experiencing panic. (*Id*.). She reported that she could not stand to be in church anymore, despite having been a Sunday school teacher in the past. (*Id*., p. 604). She also reported being fired from a recent job due to excessive absences, but that they had used a HIPPA violation as a pretext. (*Id*.).

On September 29, 2014, Don Ott, Psy.D., provided a mental consultative examination. (*Id*., pp. 449-55). Dr. Ott diagnosed Plaintiff with dysthymic disorder and alcohol dependence, in early full remission. In the area of adaptive functioning Dr. Ott noted that Plaintiff was a licensed driver and had a vehicle; lived with her 21-year old son who did most of the shopping; she could cook once or twice a week using convenience foods; could do laundry and dishes; and, she was financially dependent on her son. (*Id*., p. 454). In the area of communication, Plaintiff reported no major conflict with others and was able to have frequent social contact in her home, but she seldom went out. (*Id*.). Dr. Ott opined that Plaintiff had satisfactory verbal skills and capacity to cope with the mental/cognitive demands of basic work-like tasks. (*Id*.). He found no limitations in the areas of attending and sustaining concentration, capacity to sustain persistence, and capacity to complete work-like tasks within an acceptable timeframe. (*Id*.).

On October 14, 2014, Michael R. Westbrook, M.D., provided a physical consultative examination. (*Id*., pp. 459-63). Dr. Westbrook diagnosed Plaintiff with back pain, a history of diverticulitis surgical procedure, headaches, anxiety-depression, and GERD. (*Id*., p. 463). He

noted evidence of mild lumbar degenerative disc disease. (*Id*.). Ultimately, Dr. Westbrook found Plaintiff had mild limitations, but he did not clarify whether those limitations were in standing, walking, sitting, lifting, or any other specific activity. (*Id*.).

LPC Coffman provided a Mental Residual Functional Capacity Assessment and GAF score, both by check-box forms, on December 3, 2014. (ECF No. 9-1, pp. 532-34). LPC Coffman indicated that Plaintiff had no useful ability to function on a sustained basis in 15 out of 23 areas but made no further elaboration or citations to treatment records. (*Id*.). LPC Coffman marked that Plaintiff had a GAF score of 41-50, which the form described as having serious symptoms or any serious impairment in social, occupational, or school functioning. (*Id*.). LPC Coffman underlined the word "social" but made no further notations or citations to treatment records. (*Id*.). Plaintiff continued treatment with LPC Coffman through April 28, 2015, with treatment notes showing improvements in social functioning, such as resuming church attendance, going fishing, and dating. (*Id*., pp. 593-94, 599).

On September 3, 2015, Plaintiff had MRIs of her lumbar and cervical spine. (*Id*., p. 103). Her lumbar MRI showed disc desiccation with a small disc protrusion at L3-4; minimal canal stenosis; disc desiccation at L4-5 with right/central paracentral disc protrusion with a minimal to mild right foraminal narrowing and mild canal stenosis; L5-S1 disc desiccation with a disc bulge and without significant stenosis. (*Id*.). Plaintiff's cervical MRI showed mild right foraminal narrowing at C5-6 secondary to right paracentral disc protrusion and right uncovertebral osteophyte; patent left foramen; and, normal cervical cord. (*Id*.).

On September 16, 2015, Plaintiff was seen by Gary A. Frankowski, M.D., with back pain and right lower extremity pain that radiated into her ankle and calf. (ECF No. 9-1, p. 14). Dr.

6

Frankowski administered a transforaminal-approach epidural steroid injection (TFESI) at the L4-5 level.

On September 23, 2015, Plaintiff was seen by Kirk A. Reynolds, M.D., for left shoulder pain she rated as a 5 on a 10-point pain scale. (*Id.*, p. 19). She also complained of numbness and tingling in her left hand. (*Id.*). Upon physical examination her motor and sensory examinations were normal in both upper extremities, normal range of motion in the left shoulder, but moderate tenderness to palpation at the biceps groove and greater tuberosity. (*Id.*, pp. 19-20). An x-ray of Plaintiff's left shoulder was taken and was interpreted by Dr. Reynolds, who found no arthritis, normal architecture and alignment, and no evidence of posterior subluxation or superior escape. (*Id.*). Dr. Reynolds opined that given her well preserved motion and strength, he did not think an MRI scan would change much and recommend a corticosteroid injection and physical therapy. (*Id.*). Dr. Reynolds administered the injection at that visit. (*Id.*). On the same date, Plaintiff underwent an EMG study of her left wrist and elbow and her right wrist. (*Id.*, p. 16-17). The study ultimately showed no electrodiagnostic evidence of cervical radiculopathy, brachial plexopathy, peripheral neuropathy, or focal median or ulnar neuropathy. (*Id.*, p. 17).

On November 2, 2015, Plaintiff was admitted at St. Mary's Regional Medical Center with suicidal ideation upon referral from Counseling Associates. (*Id.*, p. 75). She reported one previous suicide attempt and numerous ongoing stressors that culminated in her no longer wanting to live. (*Id.*). She had not recovered from the death of her husband four years before; her father died in July; and, most recently she had a fight with her married boyfriend that resulted in her drinking and becoming suicidal. (*Id.*). She was diagnosed with major depression, recurrent and severe, but without psychosis, and alcohol abuse which was in remission. (*Id.*). She received individual and group treatment, was compliant with medications and tolerated all prescribed medications well,

and she was noted to be generally calm, cooperative, and engaged in treatment. (*Id.*, p. 76). Plaintiff was discharged on November 7, 2015. (*Id.*). She was prescribed Ferrous sulfate, Risperdal, Tramadol, and Effexor and was advised to follow up with her primary care provider in one to two days. (*Id.*).

On November 11, 2015, Plaintiff was seen at Counseling Associates by Brad Hayes, LPC, for a crisis follow up appointment. (*Id.*, p. 139). She was noted to be well groomed, with full affect, a depressed mood, and was open and engaged. (*Id.*). Her current issues included the loss of her father, chronic pain, and being unable to work due to her back problems. (*Id.*). She felt that she was progressing, having a decrease in symptoms, and her prognosis was listed as fair. (*Id.*). She had suicidal thoughts that were fleeting since her hospitalization, and her medication helped with controlling impulses. (*Id.*).

On November 19, 2015, Plaintiff was seen by Richard Peek, M.D., for moderate to severe pain in her middle back, lower back, neck, and hip. (*Id.*, p. 91). A physical examination revealed normal strength in her lower extremities, a limping gait, diminished paraspinous muscle tone, and painful active range of motion with moderate pain in her lumbar spine. (*Id.*, p. 95). Plaintiff was advised to do some type of exercise daily, even if for a short period, and to avoid bed rest longer than three days. (*Id.*). Dr. Peek opined that surgery was not an ideal solution for the problem, when considering the risk/benefit ratio, and that it would be more appropriate to consider pain management. (*Id*).

On December 9, 2015, Carlos Roman, M.D., gave Plaintiff back injections at the L4-5 and L5-S1 facet joints for her lumbar spondylosis, facet arthropathy, and low back pain. (*Id.*, p. 185).

On March 13, 2016, Plaintiff was seen by Candance Baker, LMSW, at Counseling Associates. (*Id.*, p. 603). She reported an ongoing friendship with the girlfriend of her ex-

boyfriend, and that she enjoyed the interaction because of little social interaction outside of family relationships. (*Id*., p. 604). She also reported that she would like to become active in church again. (*Id*.). Her prognosis was fair, and she rated her progress as a 2 on a 3-point scale. (*Id*., p. 605). She continued to attend individual therapy with LMSW Baker through July 2017, with fair to good prognoses, and reported she was doing well, had begun a romantic relationship, and was enjoying her work at several visits. (*Id*., pp. 666, 675, 677, 681, 684, 687, 688).

On April 17, 2016, Plaintiff was seen at Sherwood Urgent Care for chronic problems and back pain. (*Id*., p. 627). A physical examination showed normal gait, posture, and range of motion, but bilateral lumbosacral tenderness and spasm. (*Id*., p. 628). She received an intramuscular injection and was discharged. (*Id*., p. 629).

On July 15, 2016, Plaintiff returned to Sherwood Urgent Care for swollen feet and foot pain for the past week. (*Id*., p. 636). A physical examination showed a normal gait; dorsal, plantar, lateral, and medial swelling of the right foot; generalized swelling in the right ankle; dorsal, plantar, lateral, and medial swelling of the left foot; and, generalized swelling in the right ankle. (*Id*., p. 638). Plaintiff was advised to take two Aleve; rest, ice, and elevate the affected area; and, purchase compression stockings. (*Id*.).

Plaintiff was seen by LCSW Baker on July 17, 2017. (ECF No. 9, p. 69). Plaintiff reported she had gone a couple days without her Effexor and noted an increase in crying, but she denied any further difficulty with mood regulation following resumption of medication. (*Id*., p. 70). She also reported that her dose of Risperidone was being reduced after her medication check appointment today. (*Id*.). She reported improved mood overall and verbalized goals to work again, at least part time, and other relationship goals. (*Id*.). Her prognosis was listed as fair, with good progress. (*Id*.).

9

On August 28, 2017, Plaintiff was seen at St. Mary's Regional Medical center with complaints of low back pain. (*Id*., p. 74). She reported having low back pain for three days that worsened, and she had been taking Aleve with minimal relief. (*Id*.). She reported a history of a bulging disc and degenerative disc disease, but reported she was taking no pain medications other than Aleve. (*Id*.). A physical exam showed normal findings for her lower extremities, bilateral paraspinal lumbar tenderness, and a decreased range of motion due to pain. (*Id*., p. 77). Plaintiff was diagnosed with lumbar back pain without sciatica and was prescribed Prednisone, Tizanidine, and Tramadol. (*Id*.). She was advised to follow up with her primary care physician in one to two days. (*Id*.).

In her final treatment plan from Counseling Associates during the relevant period, performed on December 11, 2017, it was noted Plaintiff had not been attending her individual therapy sessions. (ECF No. 9, p. 59). It was also noted that her medication management had been effective in stabilizing her mood, including crying spells. (*Id*.). Plaintiff's therapy frequency was recommended to occur one to two times per quarter. (*Id*., p. 61).

A mental health evaluation update was performed at Counseling Associates by Randall Pearson, LPE, on February 28, 2018. (*Id*., p. 48). LPE Anderson opined that the current minimal level of services provided the opportunity for conservation of symptom reduction. (*Id*.). Her prognosis was evaluated to be fair to good, based upon the last year of progress. (*Id*., p. 51).

### III.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir.

2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least 12 consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. *McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

### IV.   Discussion

Plaintiff raises the following issues in this appeal: (1) whether the ALJ erred by failing to fully and fairly develop the record; (2) whether the ALJ erred in his assessment of Plaintiff's subjective complaints; and, (3) whether the ALJ erred in his RFC determination. (ECF No. 12, pp. 1-2, 5-15).

**A.   Development of the Record**

Plaintiff first argues the ALJ erred in failing to procure updated consultative examinations, as there were none after the amended onset date and Plaintiff requested them in a pre-hearing memorandum. (ECF No. 12, p. 6). Plaintiff further objects to the ALJ's rejection of some treating source opinion evidence because it was outside the relevant period, while giving weight to the opinion of a mental consultative examiner. (*Id.*).

The ALJ has a duty to develop the record fully and fairly to ensure that his decision is an informed one based on sufficient facts. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). However, "the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient

medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

The need for medical evidence does not necessarily require the Commissioner to produce additional evidence not already within the record. An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision. *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001). Providing specific medical evidence to support her disability claim is, of course, the Plaintiff's responsibility, and that burden of proof remains on her at all times to prove up her disability and present the strongest case possible. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991); 20 C.F.R. §§ 404.1512(a) and 416.912(a).

Plaintiff's contention that the ALJ erred by not procuring updated consultative examinations is incorrect. The ALJ was not required to procure any specific opinion evidence, and he had sufficient evidence in the record to provide a sufficient basis for his decision. The ALJ considered Plaintiff's testimony, the effectiveness of mental health treatment, the report of consultative medical evaluator Dr. Ott, the opinions of state agency medical consultants, and the records from Plaintiff's treating physicians in making his determination. (ECF No. 9, p. 35-38). The ALJ considered Plaintiff's history of depression and social anxiety disorder prior to the amended alleged onset date, and her hospitalization in November 2015. (*Id*., p. 35). The ALJ also considered Plaintiff's progress, as evidenced by treatment notes including her own reports to treatment providers that she was doing well at a new job and was satisfied with her overall progress. (*Id*., pp. 35-36). Although Dr. Ott's evaluation occurred in September of 2014, just over a year before the amended alleged onset date, the ALJ considered Dr. Ott's assessment and afforded it substantial weight. (*Id*., p. 30). The opinion of Mark Coffman, LPC was given no

weight, in part because it was given prior to Plaintiff's amended onset date, but also because Mr. Coffman was not an acceptable medical source. (*Id.*). Upon reviewing Mr. Coffman's assessment form, it is clear his opinion could not be afforded substantial weight (even if he were an acceptable medical source) as his opinions are given solely on a check-box form with no citation to any treatment records, objective findings, or elaboration of any kind. (ECF No. 9-1, pp. 532-34).

Regarding her physical impairments, the ALJ considered Plaintiff's testimony, including her testimony that she was not taking pain medications other than Aleve, the findings of her treatment providers, MRI's, an x-ray, her work during the relevant time period, a normal EMG, and the opinions of a consultative examiner, treating physician, and state agency medical consultants. (ECF No. 9, pp. 28-38). The opinion of Plaintiff's chiropractor, Dr. Pearson, was not given any weight in part because it was given before her amended onset date and in part because chiropractors are not acceptable medical sources. (*Id.*, p. 36).

Additionally, after the hearing, Plaintiff's counsel submitted additional medical records to the Appeals Council, but she did not submit any opinion evidence from independent consultations or treating physicians regarding Plaintiff's functioning. (ECF No. 9, pp. 46-67).

There was sufficient evidence in the record from which the ALJ could make an informed decision concerning Plaintiff's disability claim. Further, "[r]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995). Plaintiff fails to establish any prejudice from the ALJ's decision not to obtain any further medical evidence.

**B.      Subjective Complaints**

Plaintiff next argues the ALJ did not sufficiently address Plaintiff's subjective complaints and medication side effects. (ECF No. 12, p. 8). Plaintiff particularly objects to the ALJ's analysis

14

of her musculoskeletal complaints of pain and contends his reliance upon Dr. Peek's opinion was misplaced as it was a one-time visit and did not support a finding of no pain. (*Id*.). Plaintiff believes the ALJ misinterpreted Dr. Peek's notation. (*Id*).

The ALJ was required to consider all the evidence relating to Plaintiff's subject complaints, including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and, (5) function restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

The ALJ considered Plaintiff's testimony regarding her lower back pain. (ECF No. 9, p. 34). Plaintiff testified that she had taken Tramadol in the past, with only some relief, and had received injections that helped. (*Id*.). She testified that when she used Icy Hot and Aleve frequently when she was working. (*Id*., p. 99).

The ALJ analyzed Dr. Peek's note as a medical opinion. (ECF No. 9, p. 36). The ALJ did not hold that Dr. Peek's opinion supported a finding of no pain. (*Id*.). Rather, the ALJ considered Dr. Peek's note that surgery was not a solution, and his encouragement of Plaintiff to exercise daily, avoid bed rest, and continue normal activities. (*Id*.). His opinion was afforded substantial weight as Dr. Peek was a treating doctor, his opinion was consistent with the generally benign examinations of record during the relevant period, and the normal EMG. (*Id*).

The ALJ considered the opinions of state agency medical consultants, who limited Plaintiff to light work with postural limitations, and gave their opinions substantial weight. (*Id*., p. 37). However, he also added additional limitations based upon evidence received at the hearing level. (*Id*.).

The ALJ considered Plaintiff's history of low back pain complaints, lumbar pain and diminished range of motion at physical examinations, a history of facet injections, and lumbar and cervical MRIs. (*Id*., p. 34). The ALJ also considered Plaintiff's complaints of left upper extremity pain, tingling, and numbness. (*Id*.). He considered the normal EMG findings. (*Id*., p. 37). He considered the notes of Orthopedist Kirk Reynolds, M.D., and Dr. Reynold's recommendation of injections and physical therapy, as well as Plaintiff's complaints that physical therapy worsened her symptoms and back injections helped temporarily. (*Id*., p. 34).

The ALJ considered Plaintiff's treatment records at an urgent care facility in April 2016 which showed normal gait, posture, negative straight leg raises, and a normal range of motion. (*Id*., p. 35). He also considered a second visit in July 2016, with complaints of swollen feet and pain where Plaintiff was advised to take Aleve and reported she was not taking any other pain medications. (*Id*.).

Finally, the ALJ properly considered Plaintiff's work activity as a courier in 2016 and 2017 after her amended alleged onset date. (ECF No. 9, pp. 36, 38; ECF No. 9-1, pp. 667, 677, 688).

The undersigned finds no error by the ALJ in discounting Plaintiff's subjective complaints.

### C.  RFC Determination

Plaintiff argues the ALJ erred in his residual functional capacity determination as it was not supported by either examining or treating source opinion evidence within the relevant period from September 16, 2015 through January 30, 2018. (ECF No. 12, p. 10). Plaintiff argues that

16

the mental RFC finding is particularly problematic as its language was identical to the language used by non-examining medical experts, Dr. Mourot and Dr. Simon. (*Id.*). Plaintiff further argued the ALJ erred by not giving greater weight to the opinion of LPC Coffman, as it was authored more recently than that of Dr. Ott. (*Id.*, p. 14). Finally, Plaintiff argues the ALJ erred in finding Plaintiff's part-time work as a Meals on Wheels driver to be inconsistent with the claimed severity of her mental conditions. (*Id.*).

A disability claimant has the burden of establishing her RFC. *Vossen*, 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3) and 416.945(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The ALJ considered the Plaintiff's testimony, disability reports, treatment records, and medical opinion evidence in making his RFC determination. The ALJ first considered the Plaintiff's testimony concerning her pain and functional limitations. Plaintiff testified that she had daily lower back pain, which she rated as a 7 on a 10-point scale, which was exacerbated by standing on her feet too long or lifting. She also testified that she was no longer taking pain medication but had tried injections and Tramadol in the past. (ECF No. 9, p. 34). She also testified

regarding neck pain and pain that radiated into her legs and arms, depression, anxiety attacks and trouble being around crowds. (*Id*.). The ALJ found these reports of symptoms not entirely consistent with the treatment record and, therefore, accepted them only to the extent they could reasonably be accepted as consistent with the objective medical and other evidence. (*Id*.).

While the ALJ did grant substantial weight to the opinions of the state agency psychological consultants, and adopted their opinions, he also considered Plaintiff's good response to treatment, reports that she was comfortable decreasing the frequency of individual therapy, and satisfaction with her current care. (*Id*., p. 37). While the ALJ did consider Plaintiff's reports of ongoing work activity which she enjoyed, this was not the only factor and was considered in conjunction with the totality of her mental health treatment. (*Id*., pp. 37-38).

Plaintiff's argument that the ALJ erred by rejecting the opinion of Plaintiff's chiropractor, Dr. Pearson, is not persuasive both because Dr. Pearson's opinion and treatment history with the Plaintiff were from before the relevant period and because chiropractors are not an acceptable medical source. (*Id*., pp. 36, 570-71). Likewise, the ALJ did not err in rejecting the opinion offered by LPC Coffman because his opinions were rendered solely on a check-box form and licensed professional counselors (LPCs) are non-acceptable medical sources. (*Id*., pp. 36; ECF No. 9-1, pp. 532-34).

An ALJ may decide within a "zone of choice," and reversal is unwarranted simply because some evidence might support a different conclusion. *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). Here, the ALJ's RFC determination falls within the zone of choice and is supported by the medical and other evidence of record.

## V. Conclusion

For the reasons and upon the authorities discussed above, it is recommended that the ALJ's decision be affirmed and that Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the District Court.**

DATED this 23rd day of December 2019.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE